# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY.

NOVEMBER TERM, 1899.

EMMA BENTLEY, defendant and appellant,

*v.*

ELEANOR B. DIXON et al., complainants and respondents.

[Filed June 29th, 1900.]

Although the court of chancery does not possess the power to remove an executor from office or to devolve his duties as executor upon a receiver, yet when the duties of an executor are intermingled with and inseparable from his duties as a trustee, the jurisdiction of a court of equity over trusts and trustees will extend, in a proper case, to restraining the person who is trustee from performing his functions as trustee, notwithstanding the fact that such restraint will incidentally prevent his performance of his functions as executor.

On appeal from a decree advised by Vice-Chancellor Pitney, who delivered the following conclusions:

.23         .         (353)

This is a bill by remaindermen against the tenant for life to restrain waste.

The complainants are three of the children of the late Peter Bentley (second of that name), of Jersey City, and the defendants are the widow and four infant children of Mr. Bentley. The infant defendants are in the same interest as the complainants. The widow is the sole executrix of the will of Mr. Bentley, and also by its provisions entitled to the use of his whole estate during her widowhood. He died in April, 1888, leaving seven children, ranging in age from three to seventeen years, viz.: Eleanor B., Emily P., Peter, Richard, John, Eugenie and Parker.

The bill was filed on the 9th of January, 1894, and upon its presentation to the chancellor he made an order that Mrs. Bentley show cause why an injunction should not issue restraining her from further dealing with the estate, and a receiver of the estate of the deceased be appointed in accordance with the prayer of the bill. Mrs. Bentley answered the bill on the 12th of February and, after argument, the chancellor announced a decision on the 19th day of February, 1894, which was embodied in an order made on the 5th of March. The injunction was granted enjoining Mrs. Bentley from selling or encumbering the estate of her husband, and the receiver appointed, who has since had charge of it.

The gravamen of the bill is—*first,* that Mrs. Bentley claimed, assumed and exercised greater rights and powers under the will than the testament warranted, and *second,* that she had mismanaged and wasted the estate. Both of these matters the chancellor, as the order shows, determined against her upon the case as then presented to him.

The will, which was made in July, 1871, and about a year after the marriage, is in these words:

"After payment of my debts I give, devise and bequeath to my wife, Emma, during her widowhood, the income of all my estate, both real and personal, as well that which I may be possessed of as all that which I am now possessed of; after the marriage or death of my said wife, I give, devise and bequeath to my children my whole estate, be it real or personal, in fee-simple, all after-born children to be bound by this will.

"I nominate and appoint my said wife, Emma, sole executrix of this

Bentley *v.* Dixon.

my last will and testament, and hereby empower, authorize and direct her to sell and convey any or all of my real estate as to her shall seem meet, and authorize and empower her to execute sufficient deeds to the purchaser thereof."

In March, 1882, he made a codicil as follows:

"I do hereby authorize and direct that so long as my wife remains unmarried that she may make and continue such investments of my estate as to her shall seem best, and that she shall not be held accountable for any loss or mismanagement incurred during said widowhood, nor shall she be compelled to account for said estate or its management by any court or officer authorized for that purpose during said widowhood."

It was suggested that Mr. Bentley was prompted to make this codicil by a then recent decision of one of our courts holding executors liable for loss arising on assets which they found in an estate and continued to hold, but which were not such as they would be justified in investing the funds of the estate in the first instance.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

At the hearing the matter of the management of the estate in respect to the making of sales and so forth was gone into extensively, as well as the application of the funds which she had received as the proceeds thereof.

With regard to the latter it appeared that the amount expended was substantially as stated in the answer and schedules, and that she had continued to live in the mansion-house of the deceased, and that all the children had lived with and been supported by her until the filing of the bill, except that the elder child had married and left home.

With regard to the management of the estate in the matter of sales and so forth, it did not appear that the estate had suffered any serious loss in any of the sales made.

With regard to the claim of unlimited power over the estate during her widowhood, it appears that she was so advised by a very young member of the bar of this state; that she took no other advice upon that question, except that of an experienced counselor of New York who declined to give her advice upon the subject, and only acted as a friend in the matter of negotiating sales and settling with creditors and so forth.

*First.* The question raised upon the construction of the will has already been determined by the chancellor in this cause. The order appointing the receiver is in these words: "And the chancellor being of the opinion that the intention of the testator was to limit the defendant in expenditure to the income only of said estate during her widowhood, and that the powers and immunities with which she is clothed by said will were designed to protect her from any annoyance and danger in the *bona fide* exercise of her discretion in making and continuing investments and otherwise managing the estate, and from responsibility for losses occasioned thereby, but that such powers and immunities were not intended to enlarge the estate by the will first given to her, or to authorize the appropriation by her of any portion of the *corpus* of the estate of her husband for her own or her children's benefit.

The learned counsel for defendant claimed and was accorded the right to be further heard before me upon that part of the case, but his elaborate and ingenious argument has not manifested to me any unsoundness in that opinion, in which I fully concur.

*Second.* With regard to the management of the estate with respect to sales and renting, &c., I think the defendant has succeeded as well as the testator had any right to expect that she would succeed. I am unable to believe that at the time he made the codicil he contemplated or expected to die leaving his estate in the embarrassed and complicated condition in which it was when death overtook him. No doubt if his estate had been free from debt, and no arrears of taxation upon it, and had acquired such proportions that the income would support his family, his widow would have been competent to manage it. But he was, comparatively, still a young man when he died, and had been launching out into some hazardous operations and had been indulging in expensive habits, had appropriated some trust moneys, was largely in debt to his own sister for rents collected, and had permitted taxes to accumulate and become liens to a large amount upon his estate. To manage such an estate, extract it from its difficulties, pay the debts, and at the same time manage a large family of young children was altogether beyond the capacity of the defendant.

The facts developed at the hearing do not vary materially and certainly not favorably to the defendant from those which appeared before the chancellor on the application for an injunction. Upon those he concluded that the control of the estate should be taken from the defendant.

Criticism was made upon the prayer of the bill that the defendant should be removed from her position of executrix. Of course this court has no power to do that, and so much of the prayer of the bill was properly abandoned; but it does pray further that she may be enjoined from further management of the estate, from executing the power of sale conferred by the will, from disposing of any of the personal estate, and that some fit and proper person may be appointed as receiver of the estate, real and personal, and for other relief. The power of the court to grant this relief cannot be disputed.

The serious charge against the defendant is that she had assumed an unwarranted power over the estate and exercised it to the extent of living at a rate of expense far beyond what the situation of the estate warranted.

In answer to this it was said that these very complainants had the benefit of that in part. But there can be no estoppel in this case as against infants. As soon as they became of age (and, with regard to one or two of them, before they became of age), they saw the impropriety of their mother's expenditures, and applied for this remedy, and they are entirely justified in doing so for the protection of the estate against further depreciation, although they themselves, while infants, had the benefit of the waste that had previously occurred.

It appears that the defendant never sat down and calmly estimated the amount of the estate after paying debts, and the amount of the net income in order to arrive at a just conclusion or determination as to how much money the family ought to spend, but simply went on living as nearly as she thought she could afford in the style that the family had previously lived when the husband was alive and able to provide by his own daily exertions. This failure to calmly consider the situation and deal with it accordingly shows the incapacity of the defendant to act as the conservator of this estate and to regulate the expendi-

tures under it. It seems to me that $700 or $800 a year for each member of the family, including small children, was altogether too great an expenditure, considering the situation and amount of the estate. But there is nothing in the evidence to indicate that the defendant was aware of how much she was spending, or how much she was depleting the estate, until compelled to do so by the exigencies of this suit.

It was urged by the defendant's counsel as sound law, and in it he is probably right, that a certain amount of depletion of the *corpus,* to be used in supporting and educating the children during their infancy, was justified in this case, and that in dealing with the present instance the court ought to allow the widow so much out of the *corpus* as it would have allowed if application had been made to it before any such expenditure had been made. The courts have made such allowances in proper cases, the latest instance to which my attention has been called being the case of *Alling* v. *Alling, 7 Dick. Ch. Rep. 92* (at *pp. 94, 95, 109*).

But the complainants ask no accounting against the defendant. They distinctly disavow any desire to compel their mother to refund any moneys spent, and the suit is not framed in that view. All they ask is protection for the future, and the question of whether or not the expenditures were reasonable is only important as showing the judgment and capacity of the defendant in the premises. And in that view it seems to me that the expenses were altogether too extravagant. Thus it appears that every summer she spent from six to eight weeks in the country with her children at an expense of $125 or more a week. And it is very plain that the court would not in this case have authorized the expenditure at a rate of three parts of the *corpus* to two parts of the income for the support of this family in the manner that it was supported. Much detail was gone into as to the habits of the family and the manner in which the children were reared, which I do not consider it necessary here to comment upon, except to say that while it shows the defendant to be an affectionate mother, it also shows her to be lacking in sound sense, judgment and discretion.

The defendant's counsel did not ask that the control of the estate should be restored to the defendant until after so much

of the property was sold as would suffice to pay all these debts and extricate the estate from its complications, but he urged that no decree should be made that would prevent the restoration of the estate to the wife when that end should be attained, and further asked that the costs of the litigation, including counsel fees to the defendant, should be paid out of the estate.

It is unnecessary now to decide when and under what circumstances the court may withdraw its restraint and restore the control of this estate to the defendant. But with regard to the question of costs and counsel fees, in view of the attitude taken by the defendant in her answer, and by her counsel in the argument before the chancellor, and even at the final hearing, I am unable to see any ground upon which I can allow costs and counsel fees to the defendant. She set up an unfounded, and, I think, unwarranted claim to the complete control of this estate, and her conduct shortly before the filing of the bill was such as did in fact alarm her children, and I think there was enough at least in it to justify their alarm. The costs of the complainants, including the disbursements, for writing out the evidence, &c., will be paid out of the estate.

I will advise a decree accordingly.

*Mr. Cortlandt Parker,* for the appellant.

*Messrs. Corbin & Corbin,* for the respondents.

The opinion of the court was delivered by

Magie, Chancellor.

I entirely approve the conclusions reached in the court below, both as to the construction of Peter Bentley's will, and as to the proofs establishing the right of respondents to relief of the nature afforded by the final decree appealed from.

At first I felt much doubt as to the propriety of sustaining the whole decree without some modification.

One of the prayers of the bill was that appellant might be removed from the office of executrix of her husband's will. The learned vice-chancellor recognized the entire want of power in

the court of chancery to decree such removal. Starting with that well-settled doctrine, it seemed that a decree permanently enjoining appellant from the performance of every function of her office was incongruous. If the court of chancery cannot expressly remove an executor, it surely cannot effect a practical removal by stripping the executor of all his powers, and conferring those powers upon a receiver appointed by the court of chancery. A temporary restraint, pending application for removal directed to the proper court, would doubtless be within the power of the chancellor.

But my doubt has been removed by the following considerations:

When this decree was made the situation of the estate indicated that the powers and duties devolved upon appellant were those both of an executrix and a trustee. She had unlimited power to sell testator's real estate, and practically that was all that remained of his estate. The proceeds of such·sales were doubtless to be devoted by her, as executrix, to the payment of any remaining debts of the testator. But after the payment of debts they were to be held by her, in trust, for ultimate disposition to those named in the will, at her death or marriage, she being meanwhile entitled to the income therefrom.

In my judgment the rule of equitable relief in such circumstances was correctly laid down by Chancellor Zabriskie thus: "When an executor is also trustee, and the matters in his charge as trustee can be separated from those confided to him as executor, this court may remove or supersede him as trustee; but in such case he will be left to execute and perform any duty devolving upon him as executor. In proper cases this court will enjoin him from proceeding further in the execution of his duties as executor, and will appoint a receiver and direct him to pay over the estate in his hands to the receiver to be administered under the direction of the court. But in such case he is not removed or superseded as executor." *Leddell* v. *Starr, 4 C. E. Gr. 159.*

It is evident from the context that the "proper cases" intended by the chancellor for restraint by injunction, and for the appointment ,of a receiver, are those where the functions of executor and ·trustee are intermingled and inseparable.

Here the powers and duties devolved upon appellant were intermingled and inseparable. The chancellor, in order to exercise his undoubted jurisdiction to restrain her from continuing to act as trustee, necessarily restrained her action as executrix, and, in my judgment, such incidental restraint was entirely within his jurisdiction.

I therefore vote to affirm.

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, VAN SYCKEL, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH—11.

*For reversal*—None.